1   **WO**                                                                    KAB

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Janissa Mendoza,                         No. CV-22-00615-PHX-MTL (JFM)

10                      Plaintiff,

11  v.                                        **ORDER**

12
     Town of Gilbert, et al.,
13
                       Defendants.
14

15          Plaintiff Janissa Mendoza, who is represented by counsel, brought this action

16  pursuant to 42 U.S.C. § 1983 and Arizona law.  Defendants move for summary judgment,

17  and Plaintiff opposes.  (Docs. 37, 41, 53.)

18  **I.      Background**

19          In her Complaint, Plaintiff alleged the following claims: (1) state-law assault and

20  battery against the Town of Gilbert and Defendant Gilbert Police Officer Martin (Count

21  One), (2) state-law negligence against Defendant Town of Gilbert (Count Two), (3) Fourth

22  Amendment false arrest against Defendant Martin (Count Three), (4) Fourth Amendment

23  excessive force against Defendant Martin (Count Four), and (5) a *Monell* claim against the

24  Town of Gilbert (Count Five).

25          The Parties subsequently stipulated to dismiss Count One as alleged against

26  Defendant Martin.  (Docs. 20, 21.)[1]  Additionally, in her Response to the Motion for

27  ———————————————

28          [1] The Court's Order granting the Stipulation (Doc. 21) contains a scrivener's error
     naming Defendant Martin as Defendant "Martinez."

1    Summary Judgment, Plaintiff acknowledges that she no longer has a Fourth Amendment
2    false arrest claim and consents to the dismissal of Count Three.   (Doc. 41 at 5 n.2.)
3    Accordingly, the remaining claims are: (1) state-law assault and battery against the Town
4    of Gilbert (Count One), (2) state-law negligence against Defendant Town of Gilbert (Count
5    Two), (3) Fourth Amendment excessive force against Defendant Martin (Count Four), and
6    (4) a *Monell* claim against the Town of Gilbert (Count Five). Defendants assert that they
7    are entitled to qualified immunity on the remaining claims.

8    **II.     Legal Standards**

9          **A.      Summary Judgment**

10          A court must grant summary judgment "if the movant shows that there is no genuine
11   dispute as to any material fact and the movant is entitled to judgment as a matter of law."
12   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The
13   movant bears the initial responsibility of presenting the basis for its motion and identifying
14   those portions of the record, together with affidavits, if any, that it believes demonstrate
15   the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

16          If the movant fails to carry its initial burden of production, the nonmovant need not
17   produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099,
18   1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts
19   to the nonmovant to demonstrate the existence of a factual dispute and that the fact in
20   contention is material, i.e., a fact that might affect the outcome of the suit under the
21   governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable
22   jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S.
23   242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th
24   Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its
25   favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,
26   it must "come forward with specific facts showing that there is a genuine issue for trial."
27   *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal
28   citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

1    At summary judgment, the judge's function is not to weigh the evidence and
2 determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*,
3 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw
4 all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited
5 materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

6    **B.    Qualified Immunity**
7    Government officials enjoy qualified immunity from civil damages unless their
8 conduct violates "clearly established statutory or constitutional rights of which a reasonable
9 person would have known."  *Harlow v. Fitzgerald* , 457 U.S. 800, 818 (1982).  In deciding
10 if qualified immunity applies, the Court must determine: (1) whether the facts alleged show
11 the defendant's conduct violated a constitutional right; and (2) whether that right was
12 clearly established at the time of the violation.  *Pearson v. Callahan*, 555 U.S. 223, 230-
13 32, 235-36 (2009),

14    Whether a right was clearly established must be determined "in light of the specific
15 context of the case, not as a broad general proposition."  *Saucier v. Katz*, 533 U.S. 194, 201
16 (2001).  The plaintiff has the burden to show that the right was clearly established at the
17 time of the alleged violation.  *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero*
18 *v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).  Thus, "the contours of the right must
19 be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable
20 official would understand that what he is doing violates that right;" and "in the light of pre-
21 existing law the unlawfulness must be apparent."  *Mendoza v. Block*, 27 F.3d 1357, 1361
22 (9th Cir. 1994) (quotations omitted).  Therefore, regardless of whether the constitutional
23 violation occurred, the officer should prevail if the right asserted by the plaintiff was not
24 "clearly established" or the officer could have reasonably believed that his particular
25 conduct was lawful.  *Romero*, 931 F.2d at 627.

26 **III.   Facts**
27    At 11:08 p.m. on April 24, 2021, Plaintiff, a 17-year-old female, was driving with
28 her friends after leaving the prom at their high school.  (Doc. 42 ¶ 28.)  There were two

1    teenage female passengers in the car, one in the front passenger seat and the other in the

2    backseat.  (*Id.* ¶¶ 28-29.)  Defendant Martin, who is 6´1 and 200 pounds, was in his patrol

3    car and observed Plaintiff's vehicle.  (Docs. 38 ¶ 1; Doc. 42 ¶¶ 1, 65.)  Defendant Martin

4    contends he saw Plaintiff run a red light and that her speed was 60 mph in a 35 mph zone.

5    (Doc. 38 ¶¶ 1-2.)  Plaintiff contends that she went through a yellow light and that the posted

6    speed limit was 45 mph and then reduced to 35 mph.  (Doc. 42 ¶¶ 1-2.)  Plaintiff continued

7    to speed eastbound on Elliot Road at approximately 60 mph, swerved into the median on

8    two occasions, and then crossed into the westbound lane of traffic in order to make an

9    illegal lefthand pass around other eastbound vehicles.  (Doc 38 ¶ 3; Doc. 42 ¶ 3.)

10          Defendant Martin activated his vehicle siren and flashing emergency lights and

11   followed Plaintiff into a parking lot of an elementary school, where Plaintiff stopped her

12   car and put it in park.  (Doc. 38 ¶ 4; Doc. 42 ¶ 4.)  Defendant Martin suspected, based on

13   Plaintiff's driving, that she may be driving under the influence.  (Doc. 38 ¶ 5; Doc. 42 ¶ 5.)

14          Defendant Martin exited his police vehicle and screamed, "Yo, hands out the

15   window, hands out the fucking window."  (Body Worn Camera (BWC) footage 1:22-1:24.)

16   In the middle of this command, Plaintiff displayed both of her hands in plain view while

17   holding them up.  (*Id.*)  Defendant Martin continued to approach the car and yelled "Get

18   out the fucking car. Get out of the car!," while simultaneously pulling on the doorhandle,

19   manually unlocking the driver side door by reaching into the open driver side window, and

20   opening the door.  (*Id.* at 1:24-1:30.)  When the door was open, Plaintiff, who is 5´3, could

21   be fully seen in her prom dress.  (*Id.*)  After Defendant yanked open the door, Plaintiff,

22   while still displaying her hands, responded "Hey! Hey! You're not allowed to do that.

23   You're not allowed to do that."  (*Id.* at 1:29-1:38.)  When Defendant responded that he

24   could, Plaintiff started to remove her seatbelt, while still stating "you cannot reach into my

25   car like that."  (*Id.* at 1:38-1:42.)

26          Defendant then placed his hand on Plaintiff's left arm and started to pull on her arm

27   just as she was almost done taking her seatbelt off.  (*Id.*)  Plaintiff responded "Do not pull

28   on me, do not pull on me" and crouched over the steering wheel.  (*Id.* at 1:39-1:59.)

1    Defendant then stretched Plaintiff's arm out of the car and Plaintiff repeated "take your

2    hands off of me," while Defendant replied "no, get out of the car." (*Id.*) Plaintiff calmly

3    replied that she would get out of the car when Defendant took his hands off of her, and

4    Defendant then yanked her by her arm out of the vehicle, causing her to drop to the ground.

5    (*Id.* at 1:59-2:02.) Defendant then pulled Plaintiff off the ground by her arm while Plaintiff

6    screamed "don't touch me" twice. (*Id.*) Defendant then walked several steps, stated "get

7    on the ground now," and immediately afterward, performed a leg sweep bringing Plaintiff

8    to the ground. (*Id.* at 1:59-2:09.) Using his right hand, Officer Martin grabbed Plaintiff's

9    neck, forcing her face onto the asphalt. (*Id.* at 02:08-02:13.) Officer Martin then took hold

10   of Plaintiff's wrists and placed her in handcuffs. (*Id.* at 02:13-02:29.) Just over one minute

11   had elapsed from the time Officer Martin got out of his patrol vehicle until Plaintiff was in

12   handcuffs. (*Id.* at 01:20-02:29.)

13        Officer Martin went on to repeatedly demand that Plaintiff get up and Plaintiff

14   replied "Get off of me!" "Let go of me!" "You're hurting me!" "Stop!" "Why are you

15   hurting me?" (*Id.* at 02:35-03:53.) Plaintiff told Defendant that she would get up when he

16   stopped touching her and then she stood and walked toward the patrol car. (*Id.* at 3:53-

17   4:04.) Although Plaintiff was complying, Defendant put his hand on Plaintiff's arm as she

18   walked while she repeatedly asked him to stop touching her. (*Id.*) After pushing Plaintiff

19   down into the backseat, and without saying anything, Officer Martin began going through

20   the pockets of Plaintiff's prom dress, and tore the dress in the process. (*Id.* at 4:18-4:37.)

21   Once in the backseat of Officer Martin's patrol vehicle, Plaintiff requested that Officer

22   Martin loosen her handcuffs because they were too tight, and after arguing with her, Officer

23   Martin eventually loosened Plaintiff's handcuffs. (*Id.* at 4:45-5:15.)

24        On March 28, 2022, Plaintiff was charged with (a) resisting arrest; (b) interfering

25   with a police officer; (c) racing/exhibition of speed; (d) reckless driving; and

26   (e) endangerment. (Doc. 38 ¶ 13; Doc. 42 ¶ 71.) On August 22, 2022, Plaintiff pleaded

27   guilty to reckless driving and interfering with a police officer; the remaining charges were

28   dismissed. (*Id.* ¶ 72.)

1    **IV.    Discussion**

2       **A.    Fourth Amendment Excessive Force (Count Four) (Defendant Martin)**

3       Defendant Martin asserts that he is entitled to qualified immunity because he

4    "thought he was responding to a reckless and dangerous DUI suspect" and his "experience

5    and training led him to make a split-second decision that Plaintiff needed to be removed

6    from the vehicle as quickly as possible to ensure that she did not flee or pose a serious risk

7    to others."  (Doc. 37 at 7.)  Defendant Martin further argues that Plaintiff "made the

8    situation even more tense by physically resisting and by refusing to comply with Officer

9    Martin's orders."  (*Id.*)  Defendant Martin asserts that his conduct was "lawful" and there

10   is no clearly established precedent that clearly governed this case.

11              **1.    Legal Standard**

12       If the alleged use of excessive force was applied during the plaintiff's arrest, the

13   Fourth Amendment objective-reasonableness standard applies.  *Graham v. Connor*, 490

14   U.S. 386, 388 (1989).  Under this standard, a court considers certain objective factors and

15   does not consider the defendant officer's intent or motivation.  *See id.* at 397, 399

16   ("subjective concepts like 'malice' and 'sadism' have no proper place in [this] inquiry").

17       Under the Fourth Amendment standard, the reasonableness of the use of force "must

18   be judged from the perspective of a reasonable officer at the scene, rather than with the

19   20/20 vision of hindsight."  *Id*. at 396.  When determining whether the totality of the

20   circumstances justifies the degree of force, the court must consider "the facts and

21   circumstances of each particular case, including the severity of the crime at issue, whether

22   the suspect poses an immediate threat to the safety of the officers or others, and whether

23   he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*  The inquiry is

24   "whether the officers' actions are 'objectively reasonable' in light of the facts and

25   circumstances confronting them, without regard to their underlying intent or motivation."

26   *Id.* at 397 (citations omitted).

27       At the summary judgment stage, once the court has "determined the relevant set of

28   facts and drawn all inferences in favor of the nonmoving party to the extent supportable by

1   the record," the question of whether an officer's actions were objectively reasonable under

2   the Fourth Amendment is a "pure question of law."  *Scott v. Harris*, 550 U.S. 372, 381 n.8

3   (2007).  But an officer is not entitled to summary judgment if the evidence, viewed in the

4   nonmovant's favor, could support a finding of excessive force.  *Smith v. City of Hemet*,

5   394 F.3d 689, 701 (9th Cir. 2005) (en banc).  Because the excessive force balancing test is

6   "inherently fact specific, the determination whether the force used to effect an arrest was

7   reasonable under the Fourth Amendment should only be taken from the jury in rare cases."

8   *Green v. City and Cnty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal

9   quotation marks omitted); *see Smith*, 394 F.3d at 701 (excessive force cases often turn on

10  credibility determinations, and the excessive force inquiry "nearly always requires a jury

11  to sift through disputed factual contentions, and to draw inferences therefrom") (quotation

12  omitted).

13              **2.    Analysis**

14                      **a.    Severity of Crime**

15          Plaintiff asserts that the crime of reckless driving is a minor, non-violent offense

16  that cannot support the use of force used by Defendant Martin.  In Response, Defendants

17  assert that Officer Martin believed Plaintiff was a danger to herself and others "as long as

18  she was still capable of speeding away in a high performance vehicle."  Defendant's

19  arguments are flawed as they rely on Plaintiff being a DUI suspect, who may flee from the

20  scene at any moment, but from the moment Defendant contacted Plaintiff, his initial

21  suspicions that she was a DUI suspect would have been dissipated.  As Defendant Martin

22  approached Plaintiff's vehicle, she put both her hands in plain view and her face could be

23  seen.  As soon as he opened her door, he could see that she was in a prom dress and nothing

24  in her demeanor suggested that she was intoxicated or that she was going to drive away.

25  Accordingly, this factor favors Plaintiff.

26                      **b.    Whether Plaintiff Presented an Immediate Threat**

27          Plaintiff asserts that she posed no immediate threat to anyone, including Defendant

28  Martin.   Defendant Martin responds that he reasonably suspected that Plaintiff was

1    recklessly driving while under the influence. When considering "whether there was an

2    immediate threat, a 'simple statement by an officer that he fears for his safety or the safety

3    of others is not enough; there must be objective factors to justify such a concern.'" *Mattos*

4    *v. Agarano*, 661 F.3d 433, 441–42 (9th Cir. 2011) (quoting *Deorle v. Rutherford*, 272 F.3d

5    1272, 1281 (9th Cir. 2001)). As noted above, any suspicion Defendant Martin had that

6    Plaintiff was driving under the influence would have been immediately dissipated as soon

7    as he contacted Plaintiff, and there are no other facts indicating that Plaintiff posed any

8    threat. This factor favors Plaintiff.

9                    **c.        Active Resistance or Attempt to Evade Arrest**

10        Plaintiff asserts that although there may have been moments where she did not

11   immediately respond to Defendant Martin's orders or that she was resistant to him touching

12   her, she did not engage in active resistance. "[A] failure to fully or immediately comply

13   with an officer's orders neither rises to the level of active resistance nor justifies the

14   application of a non-trivial amount of force." *Nelson v. City of Davis*, 685 F.3d 867, 881

15   (9th Cir. 2012). Although Plaintiff was verbally arguing with Defendant Martin while she

16   was removing her seatbelt,[2] she was in the process of complying with Defendant Martin's

17   orders when he grabbed her by the arm. A reasonable jury could find that any further

18   resistance by Plaintiff was passive and was caused by Defendant Martin's escalation of the

19   situation, and no force was necessary. *See* Ariz. Rev. Stat. § 13-404(B)(2) ("The "use of

20   physical force against another is not justified . . . [t]o resist an arrest the person knows or

21   should know is being made by a peace officer . . . unless the physical force used by the

22   peace officer exceeds that allowed by law."); *Blankenhorn v. City of Orange*, 485 F.3d 463,

23   479-80 (9th Cir. 2007) ("a person has the limited right to offer reasonable resistance to an

24   arrest that is the product of an officer's . . . bad faith or provocative conduct," and

25   provocative conduct could be found when the crime is minor, there is lack of forewarning,

26   the force is used swiftly and there is a level of violence to the force "triggering [an

27   _____

28        [2] "Ninth Circuit law clearly establishes the right verbally to challenge the police."
     *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1019 (9th Cir. 2015) (citation omitted).

1    arrestee's] limited right to reasonable resistance.") (internal quotation marks omitted).  This

2    factor favors Plaintiff.

3                    **d.      Less Intrusive Alternatives and Proper Warnings**

4           Although officers need not avail themselves of the least intrusive means of

5    responding to an exigent situation, their failure to consider clear, reasonable and less

6    intrusive alternatives to the force employed "militates against finding the use of force

7    reasonable."  *Rice v. Morehouse*, 989 F.3d 1112, 1124 (9th Cir. 2021) (internal citation

8    omitted).   Here, Defendant Martin aggressively approached Plaintiff's vehicle, while

9    swearing at her, she had her hands in plain sight, he pulled open the driver's side door and

10   placed his hands on her before her seatbelt was all the way off.  He was never calm, did

11   not try to speak to her calmly, did not give her time to respond to his commands, and did

12   not provide any warnings that he was going to use force.  It is clearly established that a

13   failure to consider "clear, reasonable, less intrusive alternatives to the force employed

14   militates against a finding the use of force was reasonable."  *Id.* at 1124.  These factors

15   favor Plaintiff.

16          Accordingly, a reasonable jury could conclude that Defendant Martin used

17   excessive force on Plaintiff.

18                    **e.      Clearly Established**

19          Defendant Martin asserts that it was not clearly established that he could not use the

20   amount of force used under these circumstances.  In Response, Plaintiff, relying on *Rice*,

21   asserts that it is well-established in the Ninth Circuit that passive noncompliance, without

22   more, does not justify using significant force.

23          The Ninth Circuit has long held that "where there is no need for force, *any* force

24   used is constitutionally unreasonable."  *See, e.g.*, *Headwaters Forest Def. v. Cnty. of*

25   *Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000) (where there is no need for force, any force

26   used is excessive), *vacated and remanded on other grounds*, *Cnty. of Humboldt v.*

27   *Headwaters Forest Def.*, 534 U.S. 801 (2001); *see also Blankenhorn*, 485 F.3d at 480

28   (citing *Graham*'s "clear principle" that "force is only justified when there is a need for

1  force"); *Motley v. Parks*, 432 F.3d 1072, 1088 (9th Cir. 2005) ("[t]he use of a force against

2  a person who is helpless or has been subdued is constitutionally prohibited"), *overruled on*

3  *other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012); *Fontana v. Haskin,*

4  262 F.3d 871, 880 (9th Cir. 2001) ("[g]ratuitous and completely unnecessary acts of

5  violence by the police during a seizure violate the Fourth Amendment"); *P.B. v. Koch*, 96

6  F.3d 1298, 1303–04 & n.4 (9th Cir. 1996) ("since there was no need for force, [the

7  defendant's] use of force was objectively unreasonable").

8          Moreover, in *Rice*, the Ninth Circuit Court of Appeals stated,

> we clearly established one's "right to be free from the
> application of non-trivial force for engaging in mere passive
> resistance." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093
> (9th Cir. 2013); *see also Nelson v. City of Davis*, 685 F.3d 867,
> 881 (9th Cir. 2012) (explaining that cases dating back to 2001
> established that "a failure to fully or immediately comply with
> an officer's orders neither rises to the level of active resistance
> nor justifies the application of a non-trivial amount of force").
> In *Gravelet-Blondin*, we held that an officer's tasing of a
> bystander to an arrest who did not retreat despite the officer's
> orders violated clearly established law. 728 F.3d at 1092–96.
> Because the plaintiff did not make any threats or resist the
> officer, under our case law, "the use of non-trivial force *of any
> kind* was unreasonable." *Id.* at 1094 (emphasis added).

19  989 F.3d at 1125-26.  Defendant appears to assert that this case does not apply because the

20  force he used was not significant.  While the force used here is relatively less significant

21  than force involving the use of weapons, pulling Plaintiff to the ground by her arm and

22  performing a leg sweep bringing her to the ground cannot be categorized as trivial.  Because

23  it is clearly established that force cannot be used when no force is necessary and non-trivial

24  force cannot be used when there is passive resistance, Defendant Martin is not entitled to

25  qualified immunity as to the clearly established prong of the qualified immunity analysis.

26          Accordingly, because a reasonable jury could conclude that the amount of force

27  used was excessive, the Motion for Summary Judgment will be denied as to the Fourth

28  Amendment excessive force claim asserted against Defendant Martin.

1       **B.      *Monell* (Count Five) (Defendant Town of Gilbert)**

2           **1.      Additional Facts relating to *Monell* claim**

3           The Gilbert Police Department used IAPro software to track officer use-of-force

4  incidents and citizen complaints.[3] (Doc. 42 ¶ 79.)  In the months prior to the subject

5  incident, the IAPro software repeatedly alerted the Department that Officer Martin's

6  performance may need to be reviewed because he continuously exceeded the number of

7  use-of-force incidents and citizen complaints needed to trigger an alert. (*Id.*)  On April 22,

8  2021—just two days before the subject incident—the Department received an IAPro alert

9  concerning Officer Martin because he had been involved in 15 incidents since April 2020,

10  including three complaints and seven use-of-force incidents. (*Id.* ¶ 80.)  Officer Martin

11  also triggered alerts within IAPro on September 10, 2020,October 15, 2020, November 9,

12  2020, December 14, 2020, December 24, 2020, February18, 2021, and March 14, 2021.

13  (*Id.* ¶ 81.)  The IAPro alerts informed supervisors within the Department that "7 or more

14  incidents during a 12 month period indicates that the employee's performance may need to

15  be reviewed." (*Id.* ¶ 82.)  The IAPro documentation produced by the Town of Gilbert

16  indicates that a supervisor within the Department would generally give the alerts a review

17  then close the alert with no further action to discipline, re-train, or supervise Officer Martin.

18  (*Id.* ¶ 83.)

19          While employed with the Town of Gilbert, Defendant Martin completed yearly use-

20  of-force training in addition to the use-of-force training he received in the police academy.

21  (Doc. 38 ¶ 17.)

22          **2.      Arguments**

23          Defendant Town of Gilbert argues that it is entitled to summary judgment on

24  _____

25          [3] Defendant objects to the IAPro reports as hearsay and lacking foundation.  For the
purposes of ruling on the Motion for Summary Judgment, the objection is overruled
26  because this evidence could be produced in an admissible form at trial. *See, e.g.*, *Quanta*
*Indemnity Co. v. Amberwood Dev. Inc.*, No. CV 11-1807-PHX-JAT, 2014 WL 1246144,
27  at *2 (D. Ariz. March 26, 2014) (material in a form not admissible in evidence, but which
could be produced in a form admissible at trial, may be used to avoid, but not obtain
28  summary judgment) (citing cases).

1    Plaintiff's *Monell* claim because Defendant Martin did not violate Plaintiff's constitutional

2    rights, there is no showing that a policy or custom caused the use of excessive force,

3    Plaintiff has not produced evidence of an inadequate training program or that the Town

4    was deliberately indifferent to the constitutional rights of citizens, and has not shown that

5    lack of training caused a deprivation of Plaintiff's constitutional rights.

6          In Response, Plaintiff asserts that the Town maintained policies, customs, and

7    procedures that were deliberately indifferent to the right of citizens to be free from

8    excessive force, specifically (a) allowing and encouraging officers to escalate situations by

9    using unreasonable force; (b) failing to review uses of force and failing to adequately

10   investigate, discipline, and re-train officers involved in excessive force incidents; (c) failing

11   to monitor and investigate the frequency and extent of officers' uses of force; and (d) failing

12   to monitor and identify officers who use excessive force.

13         Plaintiff asserts that the Town of Gilbert had received eight IAPro alerts concerning

14   Officer Martin's performance between September 2020 and April 2021, and therefore had

15   eight opportunities within eight months to address and correct Officer Martin's conduct

16   through training or additional supervision, but the  complete failure to monitor, investigate,

17   and address Officer Martin's performance after receiving the IAPro alerts evinces a pattern

18   of deliberate indifference to the rights and safety of the public.

19         In Reply, Defendants assert that the IAPro records merely demonstrate that the

20   Town took reasonable steps to monitor its police officers' use of force and that the Town

21   routinely investigated all of the public's complaints about Officer Martin and, each time,

22   the Town determined that Officer Martin's conduct was appropriate.  Defendants assert

23   that Plaintiff has not offered any evidence to establish the specific factual circumstances

24   for each public complaint about Officer Martin, nor has Plaintiff offered evidence of what

25   steps the reviewing officers took to review any complaints by the public.  Defendants

26   further argue that the IAPro records cannot defeat summary judgment on Plaintiff's *Monell*

27   claim because they only document the number or frequency of complaints about an officer,

28   but do not detail the basis, if any, for the complaints, and thus cannot establish that Officer

1    Martin ever actually violated another person's Fourth Amendment rights.

2                    **3.      Legal Standard**

3            A government entity may not be held liable under § 1983 unless a policy, practice,

4    or custom of the entity can be shown to be the cause of or directly related to a violation of

5    constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694

6    (1978).  To state a claim based on a policy, practice, or custom of Defendant Town of

7    Gilbert, Plaintiff must allege facts showing (1) that her constitutional rights were violated

8    by an employee or employees of the Defendant; (2) that the Defendant has customs or

9    policies that amount to deliberate indifference; and (3) that the policies or customs were

10   the moving force behind the violation of Plaintiff's constitutional rights in the sense that

11   the Defendant could have prevented the violation with an appropriate policy.  *See Gibson*

12   *v. Cnty. of Washoe*, 290 F.3d 1175, 1193-94 (9th Cir. 2002).  "Policies of omission

13   regarding the supervision of employees . . . can be policies or customs that create . . .

14   liability . . . , but only if the omission reflects a deliberate or conscious choice to

15   countenance the possibility of a constitutional violation." *Id.* at 1194 (quotations omitted).

16           A "decision not to train certain employees about their legal duty to avoid violating

17   citizens' rights may rise to the level of an official government policy for purposes of

18   § 1983." *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  To support a *Monell* claim for

19   failure to train under § 1983, a plaintiff must allege facts demonstrating that the local

20   government's failure to train amounts to "deliberate indifference to the rights of persons

21   with whom the [untrained employees] come into contact." *Id*. at 61 (citing *City of Canton*

22   *v. Harris*, 489 U.S. 378, 388 (1989)).

23           Deliberate indifference may be shown if there are facts to support that "in light of

24   the duties assigned to specific officers or employees, the need for more or different training

25   is obvious, and the inadequacy so likely to result in violations of constitutional rights, that

26   the policy-makers . . . can reasonably be said to have been deliberately indifferent to the

27   need." *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (citing *Canton*, 489 U.S. at

28   390).  While "[a] pattern of similar constitutional violations by untrained employees is

1    'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to

2    train" *Connick*, 563 U.S. at 62, a plaintiff may still prove a failure-to-train claim without

3    showing a pattern of constitutional violations where a violation "may be a highly

4    predictable consequence of a failure to equip law enforcement officers with specific tools

5    to handle recurring situations." *Long v. Cnty. of Los Angeles.*, 442 F.3d 1178, 1186 (9th

6    Cir. 2006) (internal citation omitted).   In such instances, "failing to train could be so

7    patently obvious that [an entity] could be liable under § 1983 without proof of a pre-

8    existing pattern of violations." *Connick*, 563 F.3d at 64.

9          A plaintiff may prove the existence of a custom or informal policy with evidence of

10   repeated constitutional violations for which the errant municipal officials were not

11   discharged or reprimanded.  *See Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992);

12   *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001).

13                    **4.      Analysis**

14         Here, Plaintiff has not produced enough factual evidence for a reasonable jury to

15   conclude the existence of a custom or informal policy of repeated constitutional violations

16   for which Defendant Martin was not discharged or reprimanded.  Plaintiff has produced

17   records showing that Defendant Martin had unknown complaints filed against him, that the

18   complaints were reviewed by his supervisors, and Defendant Martin was not discharged or

19   reprimanded based on those complaints.  But, without information about the content of

20   those complaints, a jury would have no basis to conclude that those complaints detailed

21   repeated constitutional violations of which the Town of Gilbert was aware, but deliberately

22   ignored.  Accordingly, summary judgment will be granted in favor of Defendant Town of

23   Gilbert on the *Monell* claim.

24         **C.      Negligence (Count Two) (Defendant Town of Gilbert)**

25         Defendant Town of Gilbert asserts that Plaintiff's negligence claim fails because

26   she did not disclose any evidence that the Town failed to provide use-of-force training to

27   Officer Martin and did not disclose any evidence of what training should have been

28   provided or how the lack of training proximately caused Plaintiff's injuries.  In Response,

1    Plaintiff asserts that because of the IAPro alerts, the Town knew that Officer Martin was

2    involved in numerous use-of-force incidents and complaints and knew, or should have

3    known, that his performance needed to be reviewed and addressed through additional

4    training or supervision, but Officer Martin was never provided with training, discipline, or

5    additional supervision in response to any of the alerts.  Plaintiff asserts that the Town was

6    also aware that Officer Martin responded to a disturbing murder and attempted suicide the

7    night before the subject incident, but he returned to work anyway and, based on this, a jury

8    could reasonably infer that the Town failed to provide Officer Martin with adequate

9    training and supervision on how to handle upsetting or difficult calls for service and

10   allowed him to return for another shift when he was unfit to be working.

11          In Reply, Defendants assert that the only relevant and admissible evidence shows

12   that Officer Martin completed annual use-of-force training following the use-of-force

13   training he received in the police academy, which Defendants' unrebutted standard-of-care

14   expert has determined met the applicable standard of care for training.  Defendants further

15   assert that Plaintiff cannot offer any evidence to establish what additional supervision

16   should have been provided or how the lack of any such supervision proximately caused

17   Plaintiff's injuries because these matters are outside the common understanding of jurors.

18          Arizona law holds employers accountable for the tortious conduct of their

19   employees "if the employer was negligent or reckless in hiring, supervising, or otherwise

20   training the employee."  *Hernandez v. Singh*, No. CV-17-08091-PCT-DWL; 2019 WL

21   367994, at \*6 (D. Ariz. Jan. 30, 2019).  For negligent hiring, supervision, and training

22   claims, "Arizona follows the Restatement (Second) of Agency § 213."  *Id.* (internal

23   quotation marks and citation omitted).  According to Section 213:

24

25              A person conducting an activity through servants or other
                agents is subject to liability for harm resulting from his conduct
26              if he is negligent or reckless:

27              (a) in giving improper or ambiguous orders of [sic] in failing
                to make proper regulations; or
28

      (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others[;]

      (c) in the supervision of the activity; or

      (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958).

"For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort." *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004). If the threshold tort finding is satisfied, the employer may be liable "not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." *Quinonez for & on Behalf of Quinonez v. Andersen*, 696 P.2d 1342, 1346 (Ariz. Ct. App. 1984).

To succeed on a negligent supervision claim, "the plaintiff must show the employer knew or should have known the employee was incompetent and that the employer subsequently failed to supervise the employee, ultimately causing the harm at issue." *Hernandez*, 2019 WL 367994 at *7. To prove negligent training, "a plaintiff must show a defendant's training or lack thereof was negligent and that such negligent training was the proximate cause of a plaintiff's injuries." *Guerra v. State*, 323 P.3d 765, 772 (Ariz. Ct. App. 2014), *vacated on other grounds in Guerra v. State*, 348 P.3d 423 (Ariz. 2015).

Here, Plaintiff's argument relies on the IAPro alerts, but as discussed above, without further information regarding the details of those alerts and the Town's response to them, a reasonable jury could not find negligent supervision or training based solely on the existence of those alerts. Moreover, Plaintiff has not produced evidence of the deficiencies in the Town's training programs that allegedly led to the use of force on her. Rather, Plaintiff appears to argue that the training can be found to be insufficient based on Officer Martin's use of force in this particular instance, but that is not sufficient to support a

1    negligent training claim.  *See id.* at 772–73 ("[a] showing of an employee's incompetence

2    is not necessarily enough; the plaintiff must also present evidence showing what training

3    should have been provided, and that its omission proximately caused the plaintiff's

4    injuries.").  Accordingly, summary judgment  will be granted in favor of Defendant Town

5    of Gilbert as to the negligence claims in Count Two.

6            **D.    Assault and Battery (Count One) (Defendant Town of Gilbert)**

7            Defendant Town of Gilbert asserts that "if this Court determines that Officer Martin

8    is entitled to qualified immunity against all of Plaintiff's federal claims, this Court must

9    also dismiss Plaintiff's assault and battery claim for the same reasons, as Plaintiff is relying

10   on the same set of alleged facts to assert both her federal and state law claims."  (Doc. 37

11   at 12.)

12           Because the Court has determined that Defendant Martin is not entitled to qualified

13   immunity on the Fourth Amendment excessive force claim, this argument fails.  Defendant

14   Town of Gilbert did not make any other argument for the dismissal of the assault and

15   battery claim, so the Motion for Summary Judgment as to that claim will be denied.

16   **IT IS ORDERED:**

17           (1)     The reference to the Magistrate Judge is **withdrawn** as to Defendants'

18   Motion for Summary Judgment (Doc. 37).

19           (2)     Defendants' Motion for Summary Judgment (Doc. 37) is **granted in part**

20   **and denied in part** as follows:

21                   (a)     the Motion is **granted** as to the state-law negligence claim against

22   Defendant Town of Gilbert in Count Two and the *Monell* claim against the Town of Gilbert

23   in Count Five.

24                   (b)     the Motion is otherwise **denied**.

25           (3)     The remaining claims in this action are: (1) state-law assault and battery

26   against the Town of Gilbert (Count One), and (2) Fourth Amendment excessive force

27   against Defendant Martin (Count Four).

28   . . . .

1

(4)    This action is referred by random lot to Magistrate Judge Michael T.

2

Morrissey for the purpose of conducting a settlement conference.

3

(5)    The parties must jointly contact the chambers of Magistrate Judge Morrissey

4

at (602) 322-7680 within 14 days of the date of this Order to schedule a settlement

5

conference.

6

Dated this 26th day of June, 2024.

7

8

*Michael T. Liburdi*

9

Michael T. Liburdi
United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28